UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

|  |  |  |
|---|---|---|
| VINCENT G.[1], | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL NO.  2:19cv487 |
| | ) | |
| ANDREW SAUL, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

<u>OPINION AND ORDER</u>

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for a Period of Disability and Disability Insurance Benefits (DIB), as provided for in the Social Security Act. 42 U.S.C. § 423(a), § 1382c(a)(3).  Section 405(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based.  The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing."  It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  42 U.S.C. §405(g).

The law provides that an applicant for disability insurance benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months. . . ."  42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A).  A physical or mental

---

[1]  To protect privacy, Plaintiff's full name will not be used in this Order.

impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

1.     The claimant meets the insured status requirements of the Social Security Act

through at least December 31, 2020.

2.      The claimant has not engaged in disqualifying substantial gainful activity since March 3, 2015, the alleged onset date (20 CFR 404.1571 *et seq*.).

3.      The claimant has the following severe impairments: diabetes mellitus with peripheral neuropathy, diabetic retinopathy, obesity, and chronic kidney disease (since 2017)(20 CFR 404.1520(c)).

4.      The claimant does not have an impairment or combination of impairments meeting or medically equaling the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

5.      After careful consideration of the entire record, the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except he can never climb ladders, ropes, or scaffolds.  He can occasionally climb ramps and stairs and occasionally stoop, kneel, crouch, and crawl.  He can read ordinary newspaper or book print.  He can never work at unprotected heights, around moving mechanical parts, and can never operate a motor vehicle.

6.      The claimant cannot perform any past relevant work (20 CFR 404.1565).

7.      The claimant, born on September 30, 1969, was 45 years old, defined as a younger individual age 45-49, on the alleged disability onset date (20 CFR 404.1563).

8.      The claimant has at least a high school education and can communicate in English (20 CFR 404.1564).

9.      Transferability of job skills is not material to the determination of disability, because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11.     The claimant has not been under a disability, as defined in the Social Security Act, from March 3, 2015, through the date of this decision (20 CFR 404.1520(g)).

(Tr.  34 - 41).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to disability benefits. The ALJ's decision became the final agency decision when the Appeals Council denied review.  This appeal followed.

Plaintiff filed his opening brief on April 6, 2020.  On May 18, 2020, the defendant filed a memorandum in support of the Commissioner's decision, to which Plaintiff replied on June 1, 2020. Upon full review of the record in this cause, this court is of the view that the ALJ's decision must be remanded.

A five-step test has been established to determine whether a claimant is disabled.  *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987).  The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order:  (1)  Is the claimant presently unemployed?  (2)  Is the claimant's impairment "severe"? (3)  Does the impairment meet or exceed one of a list of specific impairments?  (4)  Is the claimant unable to perform his or her former occupation?  (5)  Is the claimant unable to perform any other work within the economy?  An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled.  A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984).  From the nature of the ALJ's decision to deny benefits, it is clear that step five was the determinative inquiry.

Plaintiff applied for a period of disability and disability insurance benefits in August 2015, alleging disability since March 3, 2015. (AR. 32). The Agency denied his claims initially on

4

October 5, 2015, and on reconsideration on December 31, 2015. (AR. 32). Following a hearing requested by Plaintiff, ALJ Kevin Plunkett denied benefits on February 2, 2018. (AR. 41). On March 26, 2019, the Agency issued a Notice of Award for a subsequent application for benefits, finding that Plaintiff became disabled on February 15, 2018. On March 28, 2018, he requested review of the ALJ's decision from March 3, 2015, the alleged onset date, through February 14, 2018. (AR. 174). On October 15, 2019, Plaintiff's request for review was denied by the Appeals Council. (AR. 1).

Plaintiff was diagnosed with obesity, lumbar spondylosis, hypertensive chronic kidney disease with stage five chronic kidney disease or end stage renal disease, sensorimotor diabetic peripheral neuropathy, and diabetes mellitus type two with diabetic neuropathy, diabetic retinopathy, and diabetic chronic kidney disease. (AR. 17, 669, 941, 979, 986). A May 27, 2015 stress test showed hypertension. (AR. 483). On June 1, 2015, he had shortness of breath after climbing two flights of stairs. (AR. 319). On June 9, 2015, he had a XA cardiac catheterization, left ventricle angiogram, and coronary arteriogram. (AR. 338, 339). On July 1, 2015 he had laparoscopic gastric bypass surgery and repair of a hernia. (AR. 634). A July 14, 2015 CT of the abdomen and pelvis showed postsurgical changes, trace amounts of fluid in the abdomen, focal eventration posterior half right hemidiaphragm, and hyperdense sludge or bile within gallbladder. (AR. 354).

On July 31, 2015, Plaintiff had dizziness, eustachian tube dysfunction, rhinitis, and other disease of the upper respiratory tract. (AR. 910). On December 1, 2015 he had neuropathy in both feet. (AR. 1055). On December 26, 2016, March 28, 2017, and August 8, 2017, he had reduced wrist, hand, and lower extremity strength; decreased sensation of the upper and lower extremities;

wide-based gait; abnormal heel to shin and tandem walking coordination; absent Hoffman, ankle clonus, and pendular knee jerk bilaterally; tended to drift to the right while walking, could not walk on heels or toes, and walked with a cane. (AR. 984-86, 1060-61, 1067-68).

On September 26, 2017, Daksha C. Vyas, M.D. completed a mental health assessment. (AR. 1136-40). Dr. Vyas was a neurologist treating Plaintiff for neurological problems. (AR. 1058). Dr. Vyas had treated him every three months from March 2016 through September 2017 (AR. 1136), performed neurological examinations (AR. 982-86, 1058-62), and managed his medication. (AR. 987-88, 1063-64). Dr. Vyas noted that Plaintiff had reduced upper and lower extremity strength and sensation bilaterally. (AR. 984-85, 1060-61, 1067-68). Dr. Vyas stated that an EMG of all four extremities was consistent with sensorimotor diabetic peripheral neuropathy. (AR. 986). Dr. Vyas opined that Plaintiff needed a job that allowed shifting positions: he could sit or stand for 10 minutes at one time and needed to have a five-minute walking period every 15 minutes. (AR. 1137). Dr. Vyas opined that Plaintiff could sit, stand, or walk for less than two hours in an eight-hour workday; reach overhead and in front of the body bilaterally for 50 percent of the workday; and handle and finger bilaterally for 15 percent of the workday. (AR. 1137, 1139). Dr. Vyas further opined that he required an unscheduled five to ten-minute break every 15 minutes. (AR. 1137-38). Dr. Vyas stated that his medication caused drowsiness. (AR. 1137).

On September 26, 2017, David A. Deschepper, M.D. completed a medical source statement. (AR. 1144). Dr. Deschepper treated Plaintiff from July 2014 through September 2017. (AR. 299, 1144). Dr. Deschepper opined that Plaintiff (1) needed a job that allowed shifting positions at will; (2) needed to elevate his legs; and (3) required unscheduled breaks to elevate legs above the waist, and that his legs should be elevated for 50 percent of the workday. (AR.

6

1142). Dr. Deschepper opined that Plaintiff could rarely lift and carry 10 pounds; occasionally lift and carry less than 10 pounds; stand or walk for two hours in an eight-hour workday; walk less than one city block; sit for 30 minutes at a time; stand for 10 minutes at a time; rarely twist and climb stairs; and never stoop, crouch, squat, or climb ladders. (1142-43). Dr. Deschepper further opined that Plaintiff would be off-task more than 25 percent of the workday. (AR. 1144).

On September 30, 2015, Disability Determination Services (DDS) medical consultant J.V. Corcoran, M.D. issued an opinion. (AR. 77). Dr. Corcoran opined that he could occasionally lift and/or carry 10 pounds; frequently lift and/or carry less than 10 pounds; sit for six hours in an eight-hour workday; stand or walk for two hours in an eight-hour workday; occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; never climb ladders, ropes, or scaffolds; and must periodically alternate sitting and standing to relieve pain and discomfort. (AR. 75). Dr. Corcoran further opined that Plaintiff's "statements about the intensity, persistence, and functionally limiting effects of [his] symptoms [were] substantiated by the objective medical evidence alone." (AR. 74).

On November 24, 2015, DDS medical consultant M. Brill, M.D. issued an opinion. (AR. 90). Dr. Brill opined that Plaintiff could occasionally lift and/or carry 10 pounds; frequently lift and/or carry less than 10 pounds; sit for six hours in an eight-hour workday; stand or walk for two hours in an eight-hour workday; occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; never climb ladders, ropes, or scaffolds; and must periodically alternate sitting and standing to relieve pain and discomfort. (AR. 87-88). Dr. Brill further opined that Plaintiff's "statements about the intensity, persistence, and functionally limiting effects of [his] symptoms [were] substantiated by the objective medical evidence alone. (AR. 87).

At the hearing, Plaintiff testified that he had peripheral neuropathy in his lower extremities and hands; had no feeling from his knees to his feet, and in his hands. (AR. 55-56). He had trouble picking things up, he dropped things, he could stand for 15 to 20 minutes at one time, stand for one hour in an eight-hour day, walk half a block, and used a cane to walk. (AR. 56, 60). He had fatigue, would tire easily, and his knees would swell if he sat too long. (AR. 60). He sat down and elevated his legs during the day and napped for two to four hours in the afternoon. (AR. 61). His medication made him tired. (AR. 60-61). His wife made breakfast and pre-made his lunches. (AR. 241). During a typical day, he tried to do chores around the house and watched T.V. (AR. 241). He had difficulty buttoning buttons, difficulty bathing on account of balance problems, and difficulty shaving. (AR. 242).

In support of remand, Plaintiff first argues that the ALJ erred in evaluating the opinions of his treating physician, Daksha C. Vyas, M.D.  The ALJ gave Dr. Vyas' opinion "some weight" because her opinion was inconsistent with Plaintiff's alleged limitations and because her "chart notes and the rest of the file do not support [her opined] restrictions." (AR. 39). Plaintiff argues that the ALJ erred in failing to afford significant weight to the opinion of Dr. Vyas. (AR. 39). Plaintiff points out that Dr. Vyas opined that Plaintiff needed a job that allowed shifting positions: he could sit or stand for 10 minutes at one time and needed to have a five-minute walking period every 15 minutes. (AR. 1137). Dr. Vyas opined that Plaintiff could sit, stand, or walk for less than two hours in an eight-hour workday; reach overhead and in front of the body bilaterally for 50 percent of the workday; and handle and finger bilaterally for 15 percent of the workday. (AR. 1137, 1139). Dr. Vyas further opined that Plaintiff required an unscheduled five to ten-minute break every 15 minutes. (AR. 1137-38). Dr. Vyas treated Plaintiff every three months

from March 2016 through September 2017. (AR. 1136).

If an ALJ declines to afford a treating physician's opinion controlling weight, he must discuss the reasons for his decision and consider: "(1) the length, nature, and extent of the treatment relationship, (2) the frequency of examination, (3) the physician's specialty, (4) the types of tests performed, and (5) the consistency and supportability of the physician's opinion." *Moss v. Astrue*, 555 F.3d 556, 560 (7th Cir. 2009), (citing 20 C.F.R. § 404.1527(d)(2)).

Plaintiff contends that, in the present case, the ALJ did not acknowledge that Dr. Vyas was Plaintiff's treating doctor and did explain why he did not began weighing her opinion with the presumption that, as the product of a treating doctor, the opinion merited significant weight. (AR. 39).  *Meuser v. Colvin*, 838 F.3d 905, 912 (7th Cir. 2016) ("[T]he ALJ was required to explicitly consider the details of the treatment relationship and explain the weight he was giving the opinion"). As noted, Dr. Vyas treated Plaintiff every three months from March 2016 through September 2017 (AR. 1136), performed neurological examinations (AR. 982-86, 1058-62), and managed Plaintiff's medication. (AR. 987-88, 1063-64). The record shows that the ALJ failed to discuss the frequency of examination or the length, nature, and extent of Dr. Vyas' treatment relationship with Plaintiff. (AR. 39).  *Gerstner v. Berryhill*, 879 F.3d 257, 263 (7th Cir. 2018) (Holding that "even if there were sound reasons for refusing to give Dr. Callaghan's opinions controlling weight, the ALJ still erred by assigning his opinions little weight without considering relevant regulatory factors").

Plaintiff further points out that Dr. Vyas was a neurologist treating Plaintiff for neurological problems. (AR. 1058). 20 C.F.R. § 404.1527(c)(5) ("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the

opinion of a source who is not a specialist"). While the ALJ acknowledged that Dr. Vyas was a neurologist, the ALJ failed to explain why her opinion did not merit greater weight given her specialty in neurology and the fact that she gave an opinion on Plaintiff's neurological problems. (AR. 39). *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011) (The fact that Dr. Tate was a psychiatrist "favor[ed] crediting Dr. Tate's assessment").

Dr. Vyas opined that Plaintiff could handle and finger bilaterally for 15 percent of the workday. (AR. 1139). However, the ALJ found that Dr. Vyas' "chart notes and the rest of the file do not support" her opined "hand restrictions." (AR. 39). Although the ALJ need not rely on a medical opinion to determine the RFC, "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p. See 16-3p (ALJ's "will consider [medical] opinions by applying the factors in 20 CFR 404.1520c and 416.920c"). Here, while the ALJ found that Dr. Vyas' opined handling and fingering limitations were inconsistent with the record, the ALJ did not assess whether Plaintiff had any handling or fingering limitations. (AR. 39). Plaintiff testified that he had trouble picking things up and that he dropped things. (AR. 56). Plaintiff contends that since the RFC assessment lacked a discussion of handling and fingering limitations (AR. 36-40), the ALJ's RFC finding was not supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005) (The ALJ's failure to explain how he arrived at a residual functional capacity determination "is sufficient to warrant reversal of the ALJ's decision").

Further, the ALJ did not explain how Dr. Vyas' "chart notes and the rest of the file" were inconsistent with Dr. Vyas' opined handling and fingering limitations. (AR. 39). *Boiles v. Barnhart*, 395 F.3d 421, 426 (7th Cir. 2005) (Remanding where the ALJ erred when he did not

explain how other evidence in the record contradicted the treating physician's opinion). Plaintiff

had peripheral neuropathy. (AR. 314). Dr. Vyas noted that Plaintiff had reduced wrist and hand

strength and decreased sensation of the arms to the fingers bilaterally. (AR. 984-85, 1060-61,

1067-68). The ALJ did not explain how this evidence of reduced upper extremity strength and

sensation did not support Dr. Vyas' opinion that Plaintiff could handle and finger bilaterally for

15 percent of the workday. *Bjornson v. Astrue*, 671 F.3d 640, 649 (7th Cir. 2012) (ALJ must set

forth a supportable record basis for the functional capacity finding). Dr. Vyas stated that an EMG

of all four extremities was consistent with sensorimotor diabetic peripheral neuropathy. (AR.

986). Plaintiff maintains that the ALJ was not qualified to interpret the significance of this

medical data. *Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014) ("ALJs are required to rely on

expert opinions instead of determining the significance of particular medical findings

themselves").

The ALJ mentioned that Plaintiff "could pick up and grip a coin with either hand." (AR.

38). However, the ALJ did not explain how this was inconsistent with Dr. Vyas' opined

limitations. (AR. 38-39). A summary of evidence does not replace meaningful analysis. *Perry v.

Colvin*, 945 F.Supp.2d 949, 965 (N.D. Ill. 2013) (Holding that "the act of summarizing the

evidence is not the equivalent of providing an analysis of the evidence"). Plaintiff correctly notes

that the ability to perform a task once upon examination does not support a finding that an

individual could sustain that action throughout a workday. *Lambert v. Berryhill*, 896 F.3d 768,

777 (7th Cir. 2018) (Remanding because "claimant's performance in exams did not undermine her

allegation that pain was triggered by prolonged activity"); *Scott v. Astrue*, 647 F.3d 734, 740 (7th

Cir. 2011) (Remanding because the fact that an individual could walk 50 feet did not demonstrate

"an ability to stand for 6 hours" in an eight-hour workday).

Plaintiff argues that the ALJ's errors were not harmless. The VE testified that being limited to occasional handling, or fingering would eliminate all employment opportunities at the sedentary exertional level. (AR. 67). Plaintiff contends that the ALJ was required to discuss how Dr. Vyas' opinion was inconsistent with his treatment notes. *McKinzey v. Astrue*, 641 F.3d 884, 891 (7th Cir. 2011) (Where a treating specialist opined to significant handling and fingering limitations, the ALJ could not simply reject that opinion).[2]

The record shows that Plaintiff was morbidly obese, had edema and decreased strength and sensation of the lower extremities, and low back spondylosis. (AR. 587, 669, 940, 1060-61). He had numbness and tingling of the feet. (AR. 324). He testified that he could stand for 15 to 20 minutes at one time. (AR. 60). He would sit down and elevate his legs during the day. (AR. 61). Dr. Vyas opined that Plaintiff needed a job that allowed shifting positions; would take unscheduled five to ten-minute breaks every 15 minutes; could sit or stand for 10 minutes at a time; and could sit, stand, or walk for less than two hours in an eight-hour workday. (AR. 1137). The ALJ found that Dr. Vyas' opinion that "claimant cannot stand or walk more than five to ten minutes" inconsistent with claimant's testimony that he could stand for "15 to 20 minutes at a time." (AR. 39). Although the ALJ need not rely on a medical opinion to determine the RFC, "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p. *See* 16-3p (ALJ's "will consider [medical]

---

[2] Plaintiff argues that Dr. Vyas' treatment notes were consistent with his opinion and thus a remand for an award of benefits would be appropriate. Although this is clearly an issue that needs to be reconsidered on remand, the record does not permit this Court to rule as a matter of law that Plaintiff is entitled to benefits.

opinions by applying the factors in 20 CFR 404.1520c and 416.920c"). Here, any inconsistency between Dr. Vyas' opined sitting, standing, and walking limitations and Plaintiff's alleged sitting, standing, and walking limitations was trivial. *Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014) (The ALJ "split hairs unfairly, in our view, when he called her testimony that she could not lift more than 10 pounds 'inconsistent' with a doctor's finding in a consultative examination that she could lift no more than 10 to 15 pounds").

Plaintiff further contends that Dr. Vyas' opined standing limitation was not inconsistent with Plaintiff's alleged walking limitations as the statements attest to two different functional abilities. *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011) (Remanding because the "ALJ failed to build the requisite 'logical bridge' between the evidence and her conclusion"). Plaintiff argues that since the RFC assessment lacked a discussion of a sit-stand option limitation (AR. 36-40), the ALJ's RFC finding was not supported by substantial evidence. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002) ("ALJs must sufficiently articulate their assessment of the evidence to assure us that they considered the important evidence and . . . to enable us to trace the path of their reasoning").

Plaintiff also argues that the ALJ failed to assess whether Dr. Vyas' opined sit-stand limitation was consistent with other medical opinions. (AR. 36-40). *Gerstner v. Berryhill*, 879 F.3d 257, 262 (7th Cir. 2018) (Remanding because "the ALJ overlooked the extent to which Dr. Callaghan's opinions were consistent with the diagnoses and opinions of other medical sources"). On September 26, 2017, Dr. Deschepper completed a medical source statement. (AR.1144). Dr. Deschepper treated Plaintiff from July 2014 through September 2017. (AR. 299, 1144). Dr. Deschepper opined that Plaintiff needed a job that allowed shifting positions between sitting,

standing, and walking at will. (AR. 1142). Thus, Plaintiff concludes that since the ALJ failed to assess whether these mental health opinions were consistent with each other, the ALJ's analysis was legally insufficient. *Hardy v. Berryhill*, 908 F.3d 309, 312-13 (7th Cir. 2018) (Remanding because the ALJ failed to assess whether the treating doctor's opinion was consistent with other medical opinions of record).

Again, Plaintiff maintains that the ALJ's errors were not harmless. *McKinzey v. Astrue*, 641 F.3d at 892 (Whether an error is harmless is a "prospective" question: "can we say with great confidence what the ALJ would do on remand"). The VE testified that having to alternate between positions every 15 minutes would preclude performance of the "jobs mentioned, especially the assembler, as well as the telephone clerk." (AR. 68). The ALJ found that Plaintiff could perform sedentary work with no sit-stand option limitation contrary to the opinions of two treating doctors and Plaintiff's testimony.

In response, the Commissioner argues that the ALJ was proper in finding Dr. Vyas' opined hand limitations inconsistent with the record because the ALJ noted how Plaintiff could "pick up and grip a coin well with both hands separately" during a medical examination.  Dr. Vyas opined that Plaintiff could handle and finger bilaterally for 15 percent of the workday. (AR. 1139). Clearly, however, being able to pick up a coin once during a medical examination is not inconsistent with a limitation to using your hands for 15 percent of the workday. *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011) (Remanding because the fact that an individual could walk 50 feet did not demonstrate "an ability to stand for 6 hours" in an eight-hour workday). The Commissioner contends that the ALJ was proper in finding Dr. Vyas' opined hand limitations inconsistent with "chart notes," medical examination testing, and "neurological evaluations."

14

However, the ALJ was not qualified to interpret the significance of this medical data. *Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014) ("ALJs are required to rely on expert opinions instead of determining the significance of particular medical findings themselves"). Dr. Vyas was a neurologist treating Plaintiff for neurological problems. (AR. 1058). Dr. Vyas stated that an EMG of all four extremities was consistent with sensorimotor diabetic peripheral neuropathy and noted reduced wrist and hand strength and decreased sensation of the arms to the fingers bilaterally. (AR. 984-85, 986, 1060-61, 1067-68).

The Commissioner further contends that "the ALJ explained that the negative clinical findings were inconsistent with other positive findings, Plaintiff's testimony, and Plaintiff's daily activities." However, the ALJ's lay opinion of medical findings does not supersede the learned medical opinion of Plaintiff's treating medical provider specializing in neurology. *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016) (Holding that ALJs are not qualified to determine the significance of objective medical findings and must rely on expert opinion).

The Commissioner argues that the ALJ did not err in evaluating Dr. Vyas' opinion because "an ALJ need not explicitly mention every regulatory factor, so long as the decision shows that he 'was aware of and considered many of the factors.'", (quoting *Schreiber v. Colvin*, 519 F. App'x 951, 959 (7th Cir. 2013)).  However, the Seventh Circuit has repeatedly held that an ALJ must explicitly consider the regulatory factors when evaluating a treating doctor's opinion. *Meuser v. Colvin*, 838 F.3d 905, 912 (7th Cir. 2016) ("[T]he ALJ was required to explicitly consider the details of the treatment relationship and explain the weight he was giving the opinion"); *Moss v. Astrue*, 555 F.3d 556, 560 (7th Cir. 2009). Additionally, the Commissioner does not cite any portion of the record indicating that the ALJ implicitly considered the regulatory

factors. (AR. 39).  *Gerstner v. Berryhill*, 879 F.3d 257, 263 (7th Cir. 2018) (Holding that "even if there were sound reasons for refusing to give Dr. Callaghan's opinions controlling weight, the ALJ still erred by assigning his opinions little weight without considering relevant regulatory factors"). Further, the ALJ found that the opinions of the Disability Determination Services (DDS) consultants deserved "little weight" because "they predate the bulk of the evidence subsequently received." (AR. 39). Therefore, the opinions of the DDS consultants could not have been used to imply that the regulatory factors were considered when evaluating Dr. Vyas' opinion. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009) (If the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, then the court must remand the matter).

The Commissioner contends that the inconsistency between Dr. Vyas' opined standing limitations and Plaintiff's alleged standing limitations was not trivial and therefore, "the ALJ provided a reasonable explanation for finding that Dr. Vyas's opinion was inconsistent with the record."  Dr. Vyas opined that Plaintiff could sit or stand for five to 10 minutes at a time. (AR. 1137). Plaintiff testified that he could stand for 15 to 20 minutes at one time. (AR. 60). There is only a difference of five minutes between their estimated standing limitations.  *Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014) (The ALJ "split hairs unfairly, in our view, when he called her testimony that she could not lift more than 10 pounds 'inconsistent' with a doctor's finding in a consultative examination that she could lift no more than 10 to 15 pounds"). Even if the difference was not trivial, the ALJ's finding was not supported by substantial evidence. If the ALJ wanted to credit the Plaintiff's alleged limitations over Dr. Vyas' opined limitations, the ALJ could have done so. However, the ALJ did not find that Plaintiff was limited to standing 10 to 15

minutes at a time. (AR. 36). *Nagel v. Colvin*, No. 2:15 CV 36 PRC, 2016 WL 1104840 *8 (N.D. Ind. Mar. 22, 2016) (While the ALJ need not base RFC determinations on specific medical opinions, the ALJ must specify what evidence supports the RFC). This Court agrees that the ALJ's error was not harmless. The VE testified that having to alternate between positions every 15 minutes would preclude performance of the "jobs mentioned." (AR. 68). Therefore, whether the difference between Dr. Vyas' opined standing limitations and Plaintiff's alleged standing limitations was 'trivial' or not, the ALJ erred by failing to include a limitation of standing for up to 15 or 20 minutes at one time, which would be work preclusive. *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011) (Holding that the ALJ failed to create a logical bridge between the evidence and conclusion where she failed to explain how she reached her conclusions regarding Scott's physical capabilities).

The Commissioner argues that the ALJ did not err in failing to include a sit-stand limitation in Plaintiff's RFC or assessing whether Mr. Vyas' opined sit-stand limitations was consistent with the opinion of Dr. Deschepper because "the ALJ considered Dr. Deschepper's opinion and assigned it little weight because the record did not support it."  Although the ALJ need not rely on a medical opinion to determine the RFC, the ALJ was not qualified to interpret raw medical data. *Stage v. Colvin*, 812 F.3d at 1125; *Moon v. Colvin*, 763 F.3d at 722. The ALJ was required to provide a basis in the record for his RFC finding. *See* SSR 96-8p (An ALJ's assessment must "[c]ontain a thorough discussion and analysis of the objective medical and other evidence, including the individual's complaints of pain and other symptoms...and set forth a logical explanation of the effects of the symptoms, including pain, on the individual's ability to work"). Having rejected the opined sit-stand limitations of Dr. Vyas and Dr. Deschepper (AR. 39)

17

and not being qualified to determine the significance of particular medical findings, the ALJ was

left with the opinions of the DDS consultants and Plaintiff's alleged limitations. The ALJ gave

"little weight" to the opinions of the DDS consultants because "they predate the bulk of the

evidence subsequently received." (AR. 39). Since the opinions of the DDS consultants were given

little weight, their opinions could not be used as a basis for the RFC finding. *Parker v. Astrue*,

597 F.3d 920, 924-25 (7th Cir. 2010) (A decision cannot be upheld with significant contradictory

conclusions by the ALJ). The ALJ could have then relied on Plaintiff's subjective allegations to

formulate the RFC finding, but he declined to do so because he found that "the claimant's

statements concerning the intensity, persistence and limiting effects of these symptoms [were] not

entirely consistent with the medical evidence and other evidence in the record." (AR. 38). Given

that the (1) the ALJ found the opined limitations of Dr. Vyas and Dr. Deschepper inconsistent

with the record, (2) the ALJ gave little weight to the opinion of the DDS consultants, and (3) the

ALJ found the medical evidence not supportive of Plaintiff's testimony, the ALJ was left with

evidentiary deficit that he could not reasonably fill with his lay medical opinion. *Suide v. Astrue*,

371 F. App'x. 684, 690 (7th Cir. 2010) (Remanding because after rejecting all relevant medical

opinions and plaintiff's testimony, the ALJ created a situation where the RFC could only be

supported by her interpretation of medical findings, which she was not qualified to do).

     As noted above, Plaintiff was morbidly obese, had edema and decreased strength and

sensation of the lower extremities, and low back spondylosis. (AR. 587, 669, 940, 1060-61). He

had numbness and tingling of the feet. (AR. 324). On December 26, 2016, March 28, 2017, and

August 8, 2017, he had reduced lower extremity strength; decreased sensation of the lower

extremities; wide-based gait; abnormal heel to shin and tandem walking coordination; absent

Hoffman, ankle clonus, and pendular knee jerk bilaterally; tended to drift to the right while walking, could not walk on heels or toes; and walked with a cane. (AR. 984-86, 1060-61, 1067-68). Given Plaintiff's symptoms and objective findings, the ALJ was not qualified to determine that two consistent treating doctor opinions, stating that Plaintiff could not sit or stand for extended periods long and must alternate positions, were not supported by the objective evidence. *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009) (Remanding because ALJ reached an independent medical conclusion.), (quoting *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) ("Common sense can mislead; lay intuitions about medical phenomena are often wrong")).

The Commissioner further contends that "the ALJ explained that opinions from Drs. Vyas and Deschepper were not supported" by noting how Plaintiff could "walk on his he[e]ls and toes with some difficulty due to unsteadiness," had "absent deep tendon reflexes of the knees and ankles," and "absent soft touch sensation at the bottom of his feet and reduced soft touch sensation from his knees to the tops of his feet." As Plaintiff has argued, difficulty walking and absent lower extremity sensation are not inconsistent with an inability to sit or stand for extended periods. *Allord v. Barnhart*, 455 F.3d 818, 821 (7th Cir. 2006) (An ALJ's finding should be overturned if "based on errors of fact or logic"). In any event, the ALJ was not qualified to determine the significance of these medical findings. *Lambert v. Berryhill*, 896 F.3d 768, 774 (7th Cir. 2018) ("ALJs must rely on expert opinions instead of determining the significance of particular medical findings themselves").

Accordingly, remand is warranted on the issue of the proper weight to be given to the opinions of Dr. Vyas.

Next, Plaintiff argues that the ALJ did not evaluate his allegations in accordance with SSR

16-3P.  Specifically, Plaintiff claims the ALJ failed to properly evaluate Plaintiff's alleged

napping. The ALJ was required to discuss whether Plaintiff's subjective allegations were

"consistent with the objective medical and other evidence in the [Plaintiff's] record." SSR 16-3p.

The ALJ found that "[e]ven though he says he naps two to four hours daily. . . this is not reported

to treating sources." (AR. 38). Plaintiff points out, however, that on January 26, 2017, Dr.

Deschepper noted that Plaintiff had fatigue. (AR. 1076). Plaintiff testified that his medication

made him tired and Dr. Vyas stated that Plaintiff's medication caused drowsiness. (AR. 60-61,

1137). Plaintiff argues that the ALJ failed to explain whether his alleged naps were consistent

with this evidence and failed to assess whether his combination of impairments could cause

fatigue. *See* SSR 16-3p (The ALJ's subjective complaint analysis must "be consistent with and

supported by the evidence, and be clearly articulated so the individual and any subsequent

reviewer can assess how the adjudicator evaluated the individual's symptoms").

Plaintiff contends that the ALJ was required to assess whether the combined effect of

Plaintiff's impairments could have caused fatigue. *Golembiewski v. Barnhart*, 322 F.3d 912, 918

(7th Cir. 2003) ("Having found that one or more of Golembiewski's impairments was "severe,"

the ALJ needed to consider the aggregate effect of this entire constellation of ailments–including

those impairments that in isolation are not severe"). Plaintiff was diagnosed with obesity, low

back spondylosis, hypertensive chronic kidney disease with stage five chronic kidney disease or

end stage renal disease, sensorimotor diabetic peripheral neuropathy, and diabetes mellitus type

two with diabetic neuropathy, diabetic retinopathy, and diabetic chronic kidney disease. (AR. 17,

669, 941, 979, 986). However, the ALJ did not mention any of these impairments when

evaluating Plaintiff's fatigue (AR. 38). Thus Plaintiff argues that the ALJ's decision was not

20

supported by substantial evidence. *Martinez v. Astrue*, 630 F.3d 693, 698 (7th Cir. 2011) ("Even if each problem assessed separately were less serious than the evidence indicates, the combination of them might well be totally disabling").

       The ALJ found Plaintiff's alleged need to nap inconsistent with the record because "[w]hen explaining a typical day. . . later on during the hearing he does not describe taking a nap." (AR. 38). However, just before the ALJ asked "can you tell us how you spend your normal day," the ALJ asked, "[d]o you sleep in the course of the day, from nine to five?" (AR. 61). Plaintiff, responding to the ALJ's napping inquiry, stated "[y]es, sir" and explained that he would "end up laying down for two to four hours" "between noon and 1:00." (AR. 61). The ALJ failed to provide a discussion explaining whether Plaintiff's testimony about daytime napping was consistent with the record. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994) ("[T]he ALJ's decision must be based upon consideration of all the relevant evidence, and" "the ALJ [must] articulate reasons for accepting or rejecting entire lines of evidence"). Thus Plaintiff concludes that since the ALJ's finding did not acknowledge the existence of evidence favorable to Plaintiff's claim, the ALJ's findings were not supported by substantial evidence. *Myles v. Astrue*, 582 F.3d 672, 676 (7th Cir. 2009) ("[T]he ALJ's basis for his credibility determination on this issue is wrong, and so the ALJ must reconsider the credibility determination in light of [all] the evidence").

       The ALJ was required to discuss whether Plaintiff's statements about activities of daily living were consistent with his other statements and the medical evidence. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001) ("The ALJ should have explained the 'inconsistencies' between Zurawski's activities of daily living (that were punctured with rest), his complaints of

pain, and the medical evidence"). The ALJ summarized some of Plaintiff's alleged daily

activities: he "reported driving," "exercise[d] by walking or riding a bike," did "many chores

around the house, including cleaning and laundry tasks, as well as cooking and grocery shopping

with his wife," "piddl[ed] around the garage," "watch[ed] television," and "read[] magazines."

(AR. 38). The ALJ then found Plaintiff's alleged activities "not entirely consistent with the

medical evidence." (AR. 38). Plaintiff points out, however, that the ALJ failed to explain how

performance any of these basic household chores contradicted any specific subjective allegation

or established that Plaintiff retained a greater functional capacity than alleged. (AR. 38).

*Beardsley v. Colvin*, 758 F.3d 834, 838 (7th Cir. 2004) ("claimants may sometimes have

structured daily activities to minimize symptoms and avoid physical and mental stressors"). The

ability to perform activities of daily living by itself does not support a finding that an individual

can sustain full-time work. *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013) ("[A]lthough it is

appropriate for an ALJ to consider a claimant's daily activities when evaluating their credibility,

this must be done with care"). Plaintiff argues that none of his reported activities were

inconsistent with his alleged need to nap. (AR. 61). While the ALJ mentioned that he "reports

piddling around the garage" (AR. 38), no explanation was given as to what "piddling around the

garage" meant or if piddling required him to sit, stand, or walk for extended periods of time. (AR.

937).  *Villano v. Astrue*, 556 F.3d at 562 (Contrary to SSR 96-7p, ALJ did not explain why

activities were inconsistent with allegations). Further, none of these reported activities required

Plaintiff to sustain postural positions for extended periods of time.  *Bjornson v. Astrue*, 671 F.3d

640, 647 (7th Cir. 2012) (Remanding because "[t]he critical differences between activities of

daily living and activities in a full-time job are that a person has more flexibility in scheduling the

former than the latter"). Plaintiff argues that since the ALJ failed to properly evaluate whether Plaintiff's statements about activities of daily living were consistent with his other allegations and the objective evidence, his decision was not supported by substantial evidence. *Clifford v. Apfel*, 227 F.3d at 872 (ALJ needed to explain why he considered the activities inconsistent with the Plaintiff's statements).

Plaintiff further contends that the ALJ's errors were not harmless, because if Plaintiff's alleged napping and activities of daily living were properly evaluated and his allegations were credited, he would likely be found disabled. *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) (An error is harmless only "[i]f it is predictable with great confidence that the agency will reinstate its decision on remand because the decision is overwhelmingly supported by the record though the agency's original opinion failed to marshal that support," because remanding would be "a waste of time"). The VE testified that being off-task 20 percent of the workday would preclude the employment opportunities proposed. (AR. 67). Plaintiff testified that he would nap for two to four hours every afternoon. (AR. 61).

In response, the Commissioner argues that the ALJ's evaluation of Plaintiff activities of daily living was proper because the "ALJ explained that Plaintiff's daily activities supported Plaintiff's ability to perform sedentary activities." Plaintiff testified that during a typical day, he tried to do chores around the house and watched T.V. (AR. 241); he sat down and elevated his legs during the day and napped for two to four hours in the afternoon (AR. 61); his wife made breakfast and pre-made his lunches (AR. 241); and he had difficulty buttoning buttons, difficulty bathing because lower legs would lose balance, and difficulty shaving. (AR. 242). Basic activities of daily living like these, especially when punctuated by rest, are not inconsistent with an inability

to sustain even sedentary work. *Rousey v. Heckler*, 711 F.2d 1065, 1071 (7th Cir. 1985) ("If a claimant cannot perform work falling within the definition of sedentary for more than a brief period, the claimant cannot be found not disabled"); *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) (Remanding because "[t]he critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter"). The ability to perform activities of daily living by itself does not support a finding that an individual can sustain full-time work. *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013) ("[A]lthough it is appropriate for an ALJ to consider a claimant's daily activities when evaluating their credibility, this must be done with care"); *Beardsley v. Colvin*, 758 F.3d 834, 838 (7th Cir. 2004) ("claimants may sometimes have structured daily activities to minimize symptoms and avoid physical and mental stressors").

The Commissioner contends that the ALJ was proper in "conclud[ing] that Plaintiff's activities were consistent with an RFC for a reduce range of sedentary work, with additional postural, visual, and environmental limitations."  However, the ALJ did not provide a discussion explaining how any of Plaintiff's alleged activities demonstrated that he could maintain work at the sedentary exertional level eight hours per day, five days per week. (AR. 38).  *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001) ("The ALJ should have explained the 'inconsistencies' between Zurawski's activities of daily living (that were punctured with rest), his complaints of pain, and the medical evidence").

The Commissioner argues that the ALJ was proper in finding Plaintiff's alleged need to nap inconsistent with the record because "as the ALJ addressed, Plaintiff did not say that his typical day involved prolonged napping." However, as noted above, just before the ALJ asked

24

"can you tell us how you spend your normal day," the ALJ asked, "[d]o you sleep in the course of the day, from nine to five?" (AR. 61). Plaintiff, responding to the ALJ's napping inquiry, stated "[y]es, sir" and explained that he would "end up laying down for two to four hours." (AR. 61). The ALJ's finding did not acknowledge the existence of evidence favorable to Plaintiff's claim. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994) ("[T]he ALJ's decision must be based upon consideration of all the relevant evidence, and" "the ALJ [must] articulate reasons for accepting or rejecting entire lines of evidence").

The Commissioner attempts to refute Plaintiff's argument that the ALJ failed to "assess whether the combined effect of Plaintiff's impairments could have caused fatigue", stating that the "ALJ properly evaluated Plaintiff's symptoms arising from all of his impairments.". In support of his contention, the Commissioner summarizes the ALJ's various findings. However, the fact that the ALJ mentioned Plaintiff's impairments separately throughout his decision does not mean that the ALJ evaluated the combined impact Plaintiff's impairments had on his fatigue. *Thomas v. Colvin*, 745 F.3d 802, 807 (7th Cir. 2014) (ALJ failed to create a logical bridge from the evidence to her conclusion considering "each category of Thomas's impairments seriatim, finding that no single category would prevent Thomas from doing the slightly-restricted light work indicated in the final RFC").

The Commissioner further contends that "I[i]sofar as Plaintiff argues that other impairments cause fatigue or that these combined impairments result in fatigue, Plaintiff has provided no evidence to support additional RFC limitations. However, Plaintiff met his burden of proof by producing medical records and supplying evidence in the form of testimony: he was diagnosed with obesity, low back spondylosis, hypertensive chronic kidney disease with stage

five chronic kidney disease or end stage renal disease, sensorimotor diabetic peripheral neuropathy, and diabetes mellitus type two with diabetic neuropathy, diabetic retinopathy, and diabetic chronic kidney disease (AR. 17, 669, 941, 979, 986); he testified that he had fatigue and would tire easily (AR. 60); he sat down and elevated his legs during the day and napped for two to four hours in the afternoon (AR. 61); and his medication made him tired. (AR. 60-61). *Ribaudo v. Barnhart*, 458 F.3d 580, 583-84 (7th Cir. 2006) (Plaintiff met burden of proof by producing the "reports of Dr. Levin and Dr. Lim"); *Scott v. Astrue*, 647 F.3d 734, 741 (7th Cir. 2011) (Plaintiff met her burden by producing "evidence in the form of her own testimony as well as medical evidence that tremors make it difficult for her to use her hands"); *Hill v. Berryhill*, No. 1:16-CV-00523, 2017 WL 1028150 at *4 (N.D. Ill. Mar. 16, 2017) ("To carry her burden, a claimant must identify what specific, relevant facts an ALJ did not to consider"), (citing *Moore v. Astrue*, 851 F. Supp. 2d 1131, 1143 (N.D. Ill. 2012)).

The ALJ was required to provide a discussion explaining how the evidence supported or failed to support Plaintiff's alleged functional restrictions. *See* SSR 96-8p ("The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)"); 20 C.F.R. § 404.1546(c).

As the ALJ failed to appropriately evaluate Plaintiff's alleged napping, remand is warranted on this issue also.

<u>Conclusion</u>

On the basis of the foregoing, the decision of the ALJ is hereby REMANDED for further proceedings consistent with this Opinion.

Entered: June 8, 2020.

<div style="margin-left: 50%;">
s/ William C.  Lee

William C. Lee, Judge

United States District Court
</div>